UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD VINES | : | PRISONER<br>CIVIL NO. 3:02CV1108 (JCH)(HBF) |
| v. | : | |
| JOHN ARMSTRONG, ET AL. | : | JULY 30, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**BACKGROUND**

The plaintiff, Edward Vines, alleges in his amended complaint that on March 19, 2002, at the Northern Correctional Institution, he was threatened by his cellmate, inmate William Ramos. He claims he informed defendant Wooven of his fears of being assaulted and requested a separate cell. He also claims he submitted an "emergency" grievance to defendant Correctional Officer St. John, who ignored it. Plaintiff next claims he informed defendant Correctional Officers Curtis and Warner of his concerns. The plaintiff claims he was assaulted by inmate Ramos after being handcuffed prior to going to recreation. The plaintiff alleges that Correctional Officers Weir, Faneuff, Knapp, Casey, Curtis, Warner, Cox, Maloney, Smith and others stood by and did nothing while he was being assaulted.

The plaintiff claimed he suffered two bruises, blindness, headaches, back pain, neck pain, cramp-like spasms, and other bumps and bruises. He claims he was seen immediately after the assault by Nurse Clark and Nurse Zucallo, who denied the plaintiff medical care and treatment. The plaintiff claims that defendant Wollenhaupt is the medical administrator and did not have him diagnosed and treated for his injuries.

The plaintiff claims defendants Curtis, Warner, Cox and Smith conspired to falsify their reports on the assault of the plaintiff. The plaintiff alleges he has also received threats of bodily harm and death threats from the defendants.

The plaintiff claims that defendant Armstrong established a policy of handcuffing Phase One inmates at Northern Correctional Institution. He further claims that defendant Santopietro is responsible for the decision to have violent and assaultive inmates celled together and that defendant Myers had knowledge of inmates being assaulted by their cell partners while handcuffed.

**STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed.R.Civ.P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a motion for summary judgment is supported by documentary evidence and sworn

affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D.Conn. Aug. 28, 1991). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also, Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

**PLAINTIFF'S CLAIMS ARE BARRED BY**
**COLLATERAL ESTOPPEL AND RES JUDICATA**

The plaintiff, Edward Vines, brought a writ of habeas corpus in the Connecticut Superior Court alleging he had been subjected to cruel and unusual punishment in that the Department of Correction had been indifferent to his safety. In his petition, the plaintiff claimed he had been assaulted by five of his cellmates at the Northern Correctional Institution, including being assaulted by inmate William Ramos on March 20, 2002. On February 24, 2004, the Court rendered its Memorandum of Decision holding, in relevant part:

> Moreover, there has been no proof that the respondent is in any way deliberately indifferent to the safety concerns of the petitioner. None of the incidents that took place in 2002 between the petitioner and other inmates appeared to result in serious physical injury to the petitioner. Indeed, there is some evidence to suggest that the petitioner and the other combatant may have contrived these incidents. In at least one of the assault situations, both inmates had already packed their belongings before the fight broke out and the two men were placed in different cells. This is suggestive of foreknowledge on the part of both of the alleged combatants that a fight that would necessitate placement in separate cells was about to break out. Given the rapid response of the Corrections officers to these fights, the repeated attempts to

3

> honor the petitioner's requests for particular cellmates, and the absence of any assaults in the past eighteen months or so, it is hard to say that this constitutes a deliberate indifference on the part of the respondent to the petitioner's safety. It may well be that the petitioner is at some risk for having taken the courageous step of renouncing his gang affiliations and attempting to re-enter society as a productive member and a father to his son. Nevertheless, it is clear to this court that the respondent and his staff are committed to ensuring the safety of the petitioner and protecting him from unwarranted danger.

Edward Vines v. Warden, State Prison, Docket No. CV01-0003438, Superior Court, Judicial District of Tolland at Rockville, February 24, 2004. Memorandum of Decision, pp. 9-10 (copy attached as Exhibit A).

Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that already has been litigated and decided. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984); see also, Aetna Cas. & Sur. Co. v. Jones, 220 Conn. 285, 296 (1991) (holding that collateral estoppel "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action"). The full faith and credit clause governs the preclusive effect afforded to state court judgments: "Such Acts, records and judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State, Territory or Possession from which they were taken." 28 U.S.C. § 1738.

The full faith and credit clause applies to actions brought pursuant to 42 U.S.C. § 1983. See Allen v. McCurry, 449 U.S. 90, 103-04 (1980). Thus, the court must apply the same preclusive effect to a state habeas decision as would Connecticut state courts. See Kulak v. City of New York, 88 Fl3d 63, 71-72 (2d Cir. 1996) (applying collateral estoppel to bar relitigation in a federal section 1983 action of issues previously decided in a state habeas proceeding); Burgos

4

v. Hopkins, 14 F.3d 787, 792-93 (2d Cir. 1994) (noting that state habeas decision may have preclusive effect in subsequent federal section 1983 action). See also, Caballero, Jr. v. Commissioner John Armstrong, Civil No. 3:03CV407 (JCH)(HBF), copy attached.

In Connecticut, collateral estoppel will be applied when "[an] issue was actually litigated and necessarily determined in a prior action . . . 'An issue is *actually litigated* if it is properly raised in the pleading or otherwise submitted for determination, and in fact determined . . . .'" Efthimiou v. Smith, 268 Conn. 499, 506-07 (Conn. 2004) (quoting Restatement (Second) of Judgments § 27 cmt. D (1982) (emphasis in original). In addition, mutuality of parties is not required to assert issue preclusion. See Jones, 220 Conn. at 302. The only requirement is that the party against whom issue preclusion is applied must have had an opportunity to litigate the merits of the issue in the prior action. See Blonder-Tongue Labs, Inc. v. University of Ill. Found., 402 U.S. 313, 329 (1971).

The doctrine of res judicata bars the relitigation of the same cause of action between the same parties. Greenberg v. Board of Governors of Fed. Reserve Bd., 968 F.2d 164, 168 (2d Cir. 1992). "'[N]o significant harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue, and . . . there is no sound reason for burdening the courts with repetitive litigation.'" United States v. Mendoza, 464 U.S. 154, 159 (1984) (quoting Standefer v. United States, 447 U.S. 10, 24 (1980)).

> For a judgment in a prior pending action to be a bar to reaching the merits in a subsequent action it is firmly established that the prior judgment must have been rendered by a court of competent jurisdiction, been a final judgment on the merits, and that the same cause of action and the same parties or their privies were involved in both suits.

In considering the plaintiff's habeas petition, the Court determined his claims that the respondent had failed to protect his safety from other inmates, including inmate Ramos. The Court made the following findings of fact:

> 7. On March 20, 2002, the petitioner was attacked by his cellmate, Inmate William Ramos while the petitioner was handcuffed in his cell preparatory to being taken out of the cell for recreation. The corrections officers promptly stopped the fight and the petitioner suffered by minor injuries. The petitioner was immediately assigned a different cellmate.

Clearly, the plaintiff in this case had a full and fair opportunity to litigate his claim that his Eighth Amendment rights were violated by the alleged failure to protect him from assault by Mr. Ramos. The plaintiff may not now relitigate whether correctional staff acted appropriately in protecting him from assault by inmate Ramos.

Necessary to the state court's finding that staff had acted both promptly and appropriately is the fact that the plaintiff's claim he informed officers of a credible threat to his safety prior to the assault did not happen (there has been no proof that the respondent is <u>in any way</u> deliberately indifferent to the safety concerns of the petitioner. State court decision, p.9, emphasis added). Plaintiff's claims in this case that officers did respond quickly to the assault is also inconsistent with the state court's decision. Any claim in this case that staff did not act promptly and appropriately is foreclosed by the state court's decision and must be dismissed.

The plaintiff's claims that Commissioner Armstrong, Security Director Santopietro and Warden Myers violated his Eighth Amendment rights should be dismissed. The state court expressly found that "there is no proof that the respondent is in any way deliberately indifferent to the safety concerns of the plaintiff." Memorandum of Decision, p.9; Exhibit A, attached. The plaintiff had the opportunity to prove deliberate indifference to his safety in regard to inmate

6

Ramos and failed to do so. He should not be allowed to relitigate the issue of his safety again in Federal Court. Plaintiff's claims to the contrary should be barred by collateral estoppel.

The state court's finding that correctional staff acted promptly and appropriately to the incident involving inmate Ramos also precludes the plaintiff's claim that defendant correctional officers filed false statements. The state court necessarily found that the officers' version of the facts was accurate in all material ways in order to determine that they acted promptly and appropriately. Plaintiff's claims to the contrary are barred.

The state court's factual finding that the plaintiff suffered only "minor injuries" precludes a determination that defendants Nurse Clark, Nurse Zucallo and Nurse Supervisor Wollenhaupt were deliberately indifferent to plaintiff's serious medical needs after the assault by inmate Ramos.[1] In order to maintain a constitutional claim of inadequate medical attention, the plaintiff must prove "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-6 (1976). The plaintiff cannot prove he suffered more than the "minor injuries" found by the state court. Therefore, this Court could not make a finding that the defendants were deliberately indifferent to plaintiff's serious medical needs without contradicting the state court's finding of fact that he suffered no more than minor injuries. The Court should dismiss these claims.

---

[1] The plaintiff has claimed to be assaulted numerous times in 2004. See habeas decision. However, the present civil rights action only involves the alleged attack by inmate

## PLAINTIFF'S CLAIMS OF FALSE STATEMENTS AND THREATS OF BODILY HARM DO NOT STATE A VALID CONSTITUTIONAL CLAIM

In paragraphs 55-56 of his amended complaint, the plaintiff alleges that defendants Warner, Curtis, Cox and Smith conspired to falsify documents and/or statements and ordered the plaintiff not to tell the truth. In paragraph 57, the plaintiff alleges the defendants threatened him. This claim fails to state a constitutional claim.

At the outset, it is clear that the plaintiff has not been reluctant to file civil actions regarding the incident with inmate Ramos in both State and Federal courts. Plaintiff does not allege that the threats, including a death, threat resulted in physical injury.[2]

The plaintiff has no federal right to be free of false accusations by correctional officers. Freeman v. Rideout, 908 F.2d 949, 951 (2d Cir. 1986). Moreover, the State court's findings in plaintiff's habeas corpus case necessarily result in a finding that the defendants' version of what occurred is correct in all material respects.

As to the plaintiff's claims of threats of physical harm, it is well settled in the Second Circuit, and beyond, that "threats or verbal harassment without any injury or damage, do not state a claim under 42 U.S.C. § 1983." Ramirez v. Holmes, 921 F.Supp. 204, 210 (S.D.N.Y. 1996); see also, Larocco v. N.Y. City Dep't of Corr., 2001 U.S. Dist. LEXIS 13839, *13 (S.D.N.Y. Aug. 31, 2001) ("mere verbal threats alone are insufficient to support a claim under § 1983," quoting Jermosen v. Coughlin, 878 F.Supp. 444, 449 (N.D.N.Y. 1995)); Oltarzewski v.

---

    Ramos. Thus, whatever claims the plaintiff has against these defendants regarding other assaults and related injuries are not a part of this litigation.

[2]    The defendants also claim that 42 U.S.C. § 1997(e) prohibits these claims in their entirety. However, the Second Circuit's decision in Thompson v. Carter, 2002 U.S. App.

Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) ("verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983," quoting Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment or abuse, where sheriff laughed at plaintiff and threatened to hang him, was not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983)); Gargiul v. Tompkins, 790 F.2d 265 (2d Cir. 1986) (there is no Eighth Amendment violation from name calling); Shabazz v. Pico, 994 F.Supp. 460, 474 (S.D.N.Y. 1998) (a verbal threat not accompanied by physical injury "does not constitute the violation of any federally protected right").

The defendants are entitled to summary judgment on these issues.

## DEFENDANTS ARMSTRONG, SANTOPIETRO AND MYERS ARE ENTITLED TO QUALIFIED IMMUNITY[3] OR SUMMARY JUDGMENT

The plaintiff alleges that former Commissioner Armstrong's policy of handcuffing behind the back created a high risk situation which contributed to the assault by inmate Ramos. He also claims that defendant Santopietro housed two Level 5 violent and assaultive inmates together, creating a "high risk" situation. Finally, the plaintiff claims that defendant Myers was aware of other inmates being assaulted while handcuffed and knew that housing two assaultive inmates in the same cell led to a high probability of assault.

It is well settled that public officials performing discretionary functions are entitled to qualified immunity from liability for their official actions. Anderson v. Creighton, 483 U.S. 635,

---

LEXIS 4349, *9-10 (2d Cir. 2002), holds otherwise. In order to preserve this argument for appeal, defendants maintain Thompson was wrongfully decided.

[3] Defendants argue that the plaintiff is barred from raising these claims as a result of the state court habeas decision holding that correctional officials had not failed to protect him from assault by inmate Ramos. This argument is made in the alternative.

107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). That is, public officials are not liable for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. The principal purpose of this immunity is to enable public officials to do their jobs without fear of subsequently facing liability for actions they could not reasonably have believed violated the law at the time, id. at 814, and to avoid disruption to effective government caused by the burdens of litigation. Mitchell v. Forsyth, 472 U.S. 511, 526-27 (1985). The test is one of objective reasonableness, and is determined by establishing whether a reasonable official in the defendants' position could have believed that his actions were lawful, in light of clearly established law. Anderson, 483 U.S. at 640.

In analyzing a claim of qualified immunity, the Court must first determine whether the law alleged to have been violated was "clearly established" at the time the alleged actions occurred. Johnson v. Jones, 115 S.Ct. 2151, 2156 (1995); Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640; Finnegan v. Fountain, 915 F.2d 817, 823 (2d Cir. 1990).

Thus, in determining whether a particular right was clearly established, the Court must first identify the claimed right in a manner suited to the facts and circumstances of the particular case. Anderson, 483 U.S. at 640; Soares v. State of Conn., 8 F.3d 917, 922 (2d Cir. 1993); Mozzochi, 959 F.2d at 1177-78. Then it must examine the case law of the Supreme Court and of the Circuit to determine whether, during the time period in question, the law was so clearly

10

established that a reasonable official would understand that his actions were unlawful. Although the precise action in question need not have been held unlawful to defeat a claim of qualified immunity, the unlawfulness must be apparent under preexisting law. Anderson v. Creighton, 483 U.S. 635, 640 (1987); Benitez v. Wolff, 985 F.2d 662, 666 (2d Cir. 1993). If the law is in flux, or if there has been no definitive interpretation prior to the actions alleged, the officials are entitled to qualified immunity as they are not "expected to anticipate subsequent legal developments." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Soares v. State of Connecticut, 8 F.3d 917, 922 (2d Cir. 1993).

The Court also must decide whether it was clear at the time of the alleged violations of law that an exception did not permit the actions in question. Gittens v. LeFevre, 891 F.2d 38, 42 (2d Cir. 1989); Robison, 821 F.2d at 921. Finally, even if it concludes that the law was clearly established, the court must determine whether it was objectively reasonable for the official to believe that his actions did not violate those rights. Oliveira v. Mayer, 23 F.3d 642, 648-49 (2d Cir. 1994). The subjective motivation of the officials is irrelevant to the inquiry. Anderson, 483 U.S. at 641; Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). Rather, the focus is on whether reasonable officials in the position of the defendants could have believed their actions were lawful. Where reasonable officials could have believed their actions were lawful. Where reasonable officials could disagree, the official is entitled to qualified immunity. Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993).

The defendants are unaware of any case holding that the use of restraints in the circumstance of this case violates the Constitution. The use of restraints has been held constitutional in many cases involving many circumstances including those in existence at the

11

Northern Correctional Institution. See e.g., Cousineau v. Armstrong, Civil No. 3:95CV1084 (AVC), Ruling on Defendants' Motion for Summary Judgment, September 23, 1998 (copy attached. Arguably, restraining one inmate in his cell often presents the opportunity for another inmate to assault him. Unfortunately, the reality of prison life is such that the opportunity to assault presents itself in many circumstances. Indeed, assaulting your cellmate after he is restrained in clear view of correctional staff, thereby subjecting yourself to punishment including the possibility of a criminal conviction, offers far less opportunity than many other circumstances occurring on a daily basis (e.g. when your cellmate is asleep). Absent other information or knowledge of the likelihood of assault, the duty of public officials to protect an inmate is that stated by the Supreme Court in Farmer v. Brennan, 511 U.S. 825. A prison official does not act in a deliberately indifferent manner unless that official knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. Id., at 837. A prison official cannot be held responsible for removing all means of allowing an inmate to assault another inmate. This would be impossible and no court has held a prison official liable for not doing so. As argued previously, restraining one inmate at a time in a cell in the presence of correctional officers does not present a "high risk" of assault.[4] Indeed, if an inmate is intent on harming his cell partner, a sleeping inmate is far less able to protect himself from assault by his cellmate. Absent knowledge of the likelihood of one inmate assaulting another, correctional officials simply cannot prevent inmate assaults.

---

[4] Indeed, assaults in the presence of correctional officers are often "staged" so that inmates can get a change in their cellmates. The state court judge believed Mr. Vines staged

A similar analysis applies to housing two "violent" inmates in the same cell. Most inmates have violence in their histories. Inmates are typically violent persons. Many violent inmates at Northern Correctional Institution manage not to assault their cellmates. Indeed, having two "violent" inmates in the same cell makes inherently more sense than one violent inmate and one passive inmate being in the same cell. Absent knowledge that one inmate is likely to harm another inmate, no court has held a prison official liable because both inmates in a cell have a history of violence.

The defendants are entitled to summary judgment on these issues as a matter of law. In the alternative, the defendants are entitled to qualified immunity as their actions do not violate clearly established law.

**DEFENDANTS WOLLENHAUPT, CLARK AND ZUCCALO**
**ARE ENTITLED TO SUMMARY JUDGMENT**

The defendants have previously argued that defendants Nurse Supervisor Wollenhaupt and Nurses Clark and Zuccalo are entitled to judgment on the basis of the state court's finding that the plaintiff suffered no more than minor injuries in any of the alleged assaults in 2002. Additionally, the defendants argue that plaintiff's medical records demonstrate the plaintiff was treated by Nurses Clark and Zuccalo and other medical staff for the minor injuries he suffered in this incident and those defendants, as well as Nurse Supervisor Wollenhaupt, are clearly entitled to judgment as a matter of law.

---

numerous cellmate assaults.

**DELIBERATE INDIFFERENCE**

Deliberate indifference by prison officials to a prisoner's serious medical or mental health need constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such claim, however, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to serious medical needs. Id., at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical or mental health care or the wanton infliction of unnecessary pain by prison personnel. Id., at 104-05. Mere negligence will not support a section 1983 claim; the conduct complained of must shock the conscience or constitute a barbarous act. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996); Martinez v. Mancusi, 443 F.2d 921, 923 (2d Cir. 1970).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Estelle, 429 U.S. at 105-06. Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

There are both subjective and objective components to the deliberate indifference standard. Id. At 702. "[T]he alleged deprivation must be, in objective terms, sufficient serious." Id. (internal quotations marks omitted). Thus, not all medical or mental health conditions satisfy this component of the standard. See Id. Rather, "[a] serious medical condition exists where 'the

failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) (quoting Chance, 143 F.3d at 702).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Chance, 143 F.3d at 702. "An official acts with the requisite deliberate indifference when that official 'knows of an disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Defendant Nurse Clark's Medical Incident Report, which was prepared shortly after the incident on March 20, 2004, noted the plaintiff was alert, oriented, gait steady, vital signs stable, pupils equal and reactive to light, left lateral side of forehead had a quarter-sized red area, slightly swollen, skin intact, no other injuries noticeable and Mr. Vines denied any other injuries. On April 2, 2002, plaintiff was seen by defendant Nurse Zuccalo on his complaint that he had been hit in the head. Nurse Zuccalo did "check him out". She assessed the plaintiff's vital signs, performed neurological checks, and referred the plaintiff to the Advanced Practice Registered Nurse (APRN). On May 31, 2002, APRN Katz-Feinberg (not a defendant) gave the plaintiff a complete physical and the plaintiff was found to be in normal limits. All of the above is substantiated by the plaintiff's medical records.

Plaintiff's medical records do not contain any evidence that the plaintiff suffered any serious injury as a result of the assault by inmate Ramos.

The plaintiff also claimed to have been assaulted on June 17, 2002 and June 26, 2002. See Memorandum of Decision, p.3, Attachment A. These alleged assaults and injuries are not the subject of this lawsuit involving the assault by inmate Ramos. While the plaintiff continues to complain about nursing staff after his examination by the APRN on May 31, 2002, he states in a grievance to defendant Wollenhaupt that he is complaining about injuries which occurred after he was seen by the APRN on May 31, 2002. See Grievance, Exhibit 1. Thus, the claim in this case is that the defendant Nurses were deliberately indifferent to the minor injuries noted on the medical incident report on March 20, 2002. It is clear that defendant Nurse Clark treated the plaintiff on March 20, 2002; that Nurse Zuccalo treated the plaintiff on April 2, 2002, and that the APRN found him to be normal after a complete physical on May 31, 2002. These facts, supported by plaintiff's medical records, clearly demonstrate the lack of deliberate indifference to any serious medical need following the assault by inmate Ramos. Indeed, the state court found nothing more than minor injuries were suffered by the plaintiff. Nurses Zuccalo and Clark, as well as their supervisor, Wollenhaupt, were not deliberately indifferent to any serious medical need.

## **CONCLUSION**

The defendants are entitled to summary judgment.

DEFENDANTS
John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:_____/s/_____
     Michael J. Lanoue
     Assistant Attorney General
     110 Sherman Street
     Hartford, CT  06105
     Federal Bar #ct05195
     E-Mail:  michael.lanoue@po.state.ct.us
     Tel: (860) 808-5450
     Fax: (860) 808-5591


## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 30th day of July 2004:

Edward Vines #181047
MacDougall/Walker Correctional Institution
1153 East Street South
Suffield, CT 06078


_____/s/_____
Michael J. Lanoue
Assistant Attorney General