ATTACHMENT A

# CONNECTICUT DEPARTMENT OF CORRECTION
## CONTRABAND/CRIMINAL PHYSICAL EVIDENCE TAG AND CHAIN OF CUSTODY

CN 690
3/00

Facility / Unit: Northern C.I.              Evidence Tag No. IR# 0203060

21

- [ ] Weapon
- [ ] Drug / Drug Paraphernalia
- [ ] Alcohol (commercial or home made)
- [ ] Appliance (e.g., television, radio, stereo, recorder, etc.)
- [ ] Currency (money or other commodity of exchange)
- [ ] Clothing
- [ ] Miscellaneous Property
- [x] Other

Brief description of item or substance and any identifying mark (s):
Video of code ▓ between inmate Vines #181047 and inmate Ramos ▓

Location found / confiscated  1 West 206

By: Staff Name  Chmielorz              Date / Time  03-20-02    08:35am.

From: Inmate Name _____  Inmate Number _____

### Chain of Custody – contraband / physical evidence
(signature required)

| STAFF FROM | STAFF TO | DATE / TIME | REASON | DISPOSITION |
|---|---|---|---|---|
| Chmielorz | Knapp | 03-20-02 / 09:30am. | review | |

(Continue on back if necessary)

# INCIDENT REPORT – Page 1

## Connecticut Department of Correction

[X] Individual
[ ] Summary

CN6(?)01
04-04-0(?)

| Facility / CEO | NORTHERN C.I. | Incident location | 3E North dayroom | Report No. | 0303(?) |

Incident Class [X] 1 [ ] 2 [ ] 3   Type F   Date 3-18-03   Time 9:12   [ ] a.m. [X] p.m.

Prepared by May, ■■■    Title C/O

| Inmate Name (last and first) | Hsg unit | Race | ID no. | Status | Staff Name (last and first) | Race | Title |
|---|---|---|---|---|---|---|---|
| Viner, Edward | 3E202 | B | 181047 | S | May, ■■■ | B | C/O |
| ADDITIONAL STAFF | | | | | O'dell, ■■■ | W | C/O |
| Kuhlman, ■■■ | W | C/O | EW | | | W | C/O |
| Brace, ■■■ | W | C/O | EW | | Sharp, ■■■ | W | C/O |
| Brown, ■■■ | W | C/O | EW | | Burkhardt, ■■■ | W | Lt |
| Allison, ■■■ | W | C/O | EW | | Saltus, ■■■ | W | Lt |
| O'Dell, ■■■ | W | C/O | EW | | Casey, ■■■ | W | Lt |
| Lash, ■■■ | W | C/O | EW | | Garcia, ■■■ | W | Lt |
| Gadget, ■■■ | B | C/O | EW | | Camacho-Rodriguez | B | C/O |
| Perone, ■■■ | W | CHW | CW | | Hackett, ■■■ | W | C/O |
| Latessa, ■■■ | W | CSW | EW | | | | |

**Status Code:** V = victim, S = suspect, E = escape, R = first employee responder, W = inmate witness, EW = employee witness

**Race Code:** W = White, B = Black, H = Hispanic, N = Native American, O = Other

**Narrative:** On the above date & time; (3-18-03 @ 9:12p) This writer was assigned 3E Pod Control. At approx. 9:12p this writer let I/m Viner, Edward #181047 out for his phone call which was sched. for 9:15p.
I/m Viner come out from his cell and enter the North dayroom. At this time I/m Viner went to use the phone in the far corner of the dayroom.
C/O O'dell stated to I/m Viner that he couldn't use that phone, he would have to use the phone closer to the C/O Bubble. I/m Viner then tried to explain to C/O O'dell that everytime he use that phone (closer to the C/O's Bubble) he has problem getting thru with his call. C/O O'dell stated that he didn't care about that, & that everyone else used that phone and didn't have any problem. C/O O'dell stated to I/m Viner that if he didn't use the assign phone, he would have to lock back-up. I/m Viner then requested to speak

Reporting employee signature ■■■ May    Title C/O
Report date 3-18-03   Report time 10:35   [ ] a.m. [X] p.m.   Type [X] Individual [ ] Summary

### FOLLOW - UP

Property Damage   NA       Value $ NA
Contraband recovered   NA
Physical force   YES       Chemical agents   NA       Restraints   YES

Assigned to:
[ ] Protective Custody        [ ] Isolation              [ ] Medical
[ ] Administrative detention  [ ] Outside Hospital
[X] 15 – minute watch         [X] Other  4 POINT SOFT STATIONARY RESTRAINT STATUS (IW-102)



# Incident Report – Supplemental Page
## Connecticut Department of Correction

**3** of **2**

CN66?/3
REV 4/?/02

Facility/CEO **NORTHERN C.I.**   Incident location **3 East**   Report no. **0303054**

Incident class [X] 1 [ ] 2 [ ] 3   Type **F**   Date **3-18-03**   Time **9:10**   [ ] a.m. [X] p.m.

Prepared by **May,** ▓▓▓   Title **C/O**

Additional narrative: to a Supervisor, in which this writer thought C/O Odell was going to call. More words between both I/M Viner & C/O Odell was said. I/M Viner then started to walk back over to the assign phone that C/O Odell told him to use, C/O Odell again stated "No" you going to lock-up. I/M Viner continue to try his phone call. As C/O Odell was exiting the Dayroom I/M Odell made a statement to I/M Viner that "one day he was going to Fuck him up."
I/M Viner then replyed ~~oh~~ well Fuck-me up now, that's when C/O Odell ~~enter~~ Re-enter that dayroom & approched I/M Viner.
I/M Viner then leaned towards C/O Odell and stated go ahead and Fuck-me up, that's when C/O Odell grab I/M Viner by his jump suit collar, and that's when this writer called the Code Orange.

E.O.R

Reporting employee signature **Garland May**   Title **C/O**

Report date **3-18-03**   Report time **10:35**   [ ] a.m. [X] p.m.   Type [ ] Individual [ ] Summary

—Copy   Exhibit 4

On 3-18-03 I PRISONER HOOKS, KENDALL # 170278 WITNESSED CORRECT Officer ODELL IN AN VERBAL ALTERCATION WITH I/M EDWARD VINES # 000000 OVER HIS TELEPHONE CALL IN 3-EAST NORTH DORM AT OR AROUND 9:00-9:30 p.m. I'M VINES TOLD CORRECTIONAL OFFICER ODELL SEVERAL TIMES THAT HE TRIED THE OTHER PHONE WHICH WOULDN'T ACKNOWLEDGE HIS CALL FOR REASONS HE DID NOT KNOW THEREFORE HE WAS USING THE OTHER PHONE. OFFICER ODELL TOLD I/M VINES TO USE THAT PHONE OR LOCK UP. I/M VINES FURTHER ELABORATED THAT HE JUST TRIED THAT PHONE. CORRECTIONAL OFFICER ODELL TENACIOUSLY STATED I DON'T CARE. ( ALL THIS TOOK PLACE AT THE BACK PHONE WHICH IS ABOUT 2½ ARM LENGTHS AWAY FROM MY WINDOW I'M IN CELL #112) I'M VINES, EDWARDS THEN ASK TO SEE THE LT. OR SHIFT SUPERVISOR CORRECTIONAL OFFICER ODELL SAID "YOU'RE NOT SEEING NO FUCKING BODY" At THIS TIME OFFICER SHARP WAS OBSERVING THE ALTERCATION FROM THE STEPS & PROCEEDED TO WALK INTO THE DAYROOM AT WHICH TIME I/M VINES, EDWARDS REQUESTED TO CORR. OFFICER SHARP MAY I PLEASE SEE THE LT. OR SHIFT COMMANDER. C/O SHARP DID NOT RESPOND VERBALLY BUT GRAB HIS RADIO & PASSED IT TO C/O ODELL HE TOOK THE RADIO & SAID "I'M NOT CALLING SHIT" I/M VINES, EDWARDS ASK OFFICER SHARP COULD YOU PLEASE LET ME USE THE PHONE OR CALL THE LT. OR SHIFT COMMANDER. OFFICER SHARP DID NOT RESPOND SO I/M VINES, EDWARD TURNED HIS BACK TO BOTH C/O ODELL & SHARP PLACED BOTH HIS HANDS ABOVE HIS HEAD ON THE GLASS & SAID I'M ENTITLED TO SEE A LT. OR SHIFT COMMANDER. ODELL SAID YOU'RE NOT SEEING ANYBODY. I/M VINES, EDWARD THEN WALKED AWAY BACK TO THE PHONE THAT HE TRIED TO USE PRIOR TO THE ALTERCATION. (Conton pg

-2-

HE THEN STOPPED & PRESSED THE BOTTON CALLING FOR THE OFFICER IN THE BUBBLE, C/O ODELL THEN WALKED OUT OF THE DAYROOM EXCLAIMING THAT ONE OF THESE DAYS HE WAS GOING TO FUCK I/M VINES, EDWARD UP AT WHICH TIME I/M VINES, EDWARD TOLD HIM THAT HE WAS GOING TO DO NOTHIN TO HIM. C/O ODELL SAID "OH YEAH" PROCEEDED TO TURN AROUND & WALK BACK TOWARD I/M VINES, EDWARD RAPIDLY YELLING WHAT DO YOU WANT TO DO, I/M VINES, EDWARD HIS ARMS & PUT THEM IN THE AIR C/O ODELL GRABBED I/M VINES, EDWARDS WITH TWO HANDS & I/M VINES, EDWARDS KEPT HIS HANDS IN THE AIR WHILE C/O ODELL PROCEEDED TO PULL HIM TO THE GROUND AT THIS TIME C/O SHARP RAN OVER AND ASSISTED C/O ODELL IN TAKING DOWN I/M VINES EDWARD, ONCE THEY GOT HIM ON THE FLOOR C/O ODELL BEGAN TO HIT I/M VINES WITH SHORT PUNCHES WHILE DIGGING IN HIS EYE AND HE INTENTIONALLY SNATCHED HIS GOLD CHAIN PLUS MEDALLION OFF HIS NECK, SEVERAL OFFICERS CAME I/M VINES, EDWARD WAS THEN MACED AFTER BEING RESTRAIN NOT ONCE DID HE BECOME AGGRESSIVE OR RESIST HE WAS THEN ESCORTED BACKWARDS INTO THE INTERVIEW ROOM THEN MEDICAL THEN HE WAS TOOKEN OUT OF THE UNIT. (THE CAMERA REFLECTED THE ENTIRE INCIDENT) ALSO THIS WHOLE ALTERCATION TOOK PLACE FOR ABOUT 15-00 MIN BEFORE THE CODE WAS CALLED. I HEREBY VOLUNTARILY SUBMIT THIS AFFARDAVIT & UNDER THE PENALTY OF PERJURY I SWEAR THAT THE ABOVE STATEMENT IS THE TRUTH.

HOOKS, KENDALL #170278
X Kendall Hooks

NOTARY REPUBLIC

Affidavit of
Michael Mussington #122340 / 3E118

District of Tolland County
Somers Connecticut

COPY

Date: March 18, 2003

I Michael Mussington #122340, voluntarily brings forth this Affidavit in support of Edward Vines #181041. On March 18, 2003 on or about 9:00pm - 9:30pm, The under signature witness hearing loud voices coming from Day Room Feeding Area at which time this writer went to the cell door and witnessed correction officer Odell screaming in a hostile aggressive threatening manner, stating that he Officer Odell would kick Mr. Vines ass one day. At this time Mr. Vines requested to see a Lieutenant / Shift Supervisor. Mr. Vines request was denied by c/o Odell, correction officer Sharp extended his hand with Walkie Talkie Radio as if passing it to c/o Odell to call a Lieutenant. C/o Odell refused the Radio and began threatening to kick Mr. Vines ass in the Future. Mr. Vines told c/o Odell to do it (referring to Odell kicking his Ass) c/o Odell turned and approach Mr Vines screaming while pulling Mr. Vines by his collar — Jumper forward toward the ground at which time c/o Sharp intervene by helping c/o Odell bring Mr. Vines to the ground. c/o Odell began punching Mr. Vines in the upper chest & Facial Area. moments later many correction officers arrived and secured Mr. Vines with restraints (Handcuffs & Leg Iron) then escorted him out of the three east unit. (continue on page two)

-2-

Please Note that this writers cell # 112 has clear visual view of the enter day Room, At No time did Mr. Vines put his hand on c/o Odell, c/o Sharp or Any other correction officer to be Subjected too c/o Odell demented physical Abuse. The unit Security cameras will show Mr. Vines went as far as placing his hands (m.m.) up over his head and placing them on the day Room glass it Looks As though Mr. Vines tried to avoid c/o Odell. This incident was in direct view of the unit camera. End of Statement!

I hereby certify that this statement is voluntarily done, And is True & correct to the best of my knowledge I understand A false Statement is perJury and can be prosecuted by Law of the United States.

Respectfully Submitted,
Michael Mussington
Michael Mussington #122340
Northern Corr. Inst.
  P.O. Box 665
Somers, Ct. 06071

Copy

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

PERCELL BLAKENEY            : CIVIL ACTION NO.3:95CV00844(AHN)
                            :                              (DFM)
    v.                      :
                            :
WARDEN MAY, et al.          : MAY 14, 1996

### AFFIDAVIT OF COMMISSIONER ARMSTRONG

The undersigned being duly sworn hereby deposes and says:

1. I am the Commissioner of Correction for the State of Connecticut. Attached hereto as Exhibit A is a copy of my Vita.

2. Northern is a new institution having opened for inmate population in March of 1995. Mr. Blakeney has been confined at Northern since March 20, 1995 because he has been found guilty of more than 190 disciplinary violations. See my Affidavit dated August 11, 1995 previously filed in this matter attached to which is Mr. Blakeney's disciplinary history.

3. Northern serves as the facility for those inmates who cannot be housed elsewhere because of the immediate threat they present to public safety, staff safety, other inmates and facility security. Mr. Blakeney's record clearly places him in this category of dangerous inmates. See my August 11, 1995 affidavit attached to which is Mr. Blakeney's disciplinary history.

4. Because of the objectively established and determined violent behavior of the Northern inmates, certain security procedures not required in other correctional settings are essential for safety purposes at Northern. Combined with these

security procedures is an application of a departmental, inmate behavioral modification program which, in general, provides that incoming Northern inmates are subjected to the highest or most stringent security requirements and through good behavior and program participation can earn their way to the least stringent security requirements and ultimately transfer to a high security/general population type facility. This program is similar to existing or proposed programs in most of the other states and in the federal system.

5. Mr. Blakeney is currently a "Phase I inmate" which is the most stringent security status at Northern. An inmate in Phase I is mechanically restrained by handcuffs and leg restraints at all times when he is out of his cell.

6. Phase I inmates have demonstrated by their prior conduct that if permitted to mingle with staff or other inmates while unrestrained, they present an unacceptable risk to safety. Less restrictive alternatives have not been adequate to deter or prevent violent behavior of these inmates. Thus, it is my judgment, based upon my experience as a correctional administrator, that these measures are not only appropriate but necessary.

7. The necessity of these security measures includes restraining Phase I inmates while outside of their cell or outside of the building on recreation.

8. Most of the inmates at NCI, including Mr. Blakeney, have a history of assaults on staff or other inmates. Some inmates also have a history of attempting or effecting an escape from the custody of the Commissioner of Correction. Additionally, many inmates at NCI are members of a security risk groups or gangs.

9. Given the histories of the inmates at Northern, security and safety demands are of such concern that inmates are not allowed to congregate. Inmates eat in their cells, not in dining halls. The only time inmates come together for any period of time is during recreation. Inmates recreate in groups of 4 or 8 depending upon what phase of the program they are classified.

10. When Phase I inmates are out of their cell they are always restrained by hand and ankle cuffs and are under the constant visual and audible surveillance of a correctional officer

11. These safety measures are absolutely necessary to maintain the security of the facility and the safety of staff and inmates alike.

12. Northern and indeed all DOC facilities present security concerns because of the nature of those individuals who reside in them. To introduce the inmates "sharing" proposal sought by Mr. Blakeney in any correctional facility within the state would be administratively impossible. Even more importantly, such a proposal would gravely jeopardize our ability to maintain the security and the safety of staff and inmates.