UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD VINES | : |
| | : PRISONER CASE NO. |
| v. | : 3:02-cv-1108(JCH) |
| | : |
| JOHN ARMSTRONG, et al.[1] | : MARCH 28, 2005 |

**RULING RE: MOTION FOR SUMMARY JUDGMENT [DKT. NO. 33]**

The plaintiff, Edward Vines ("Vines"), has filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915. He claims that the defendants failed to protect him from assault by his cellmate. Vines seeks damages from the defendants in their individual capacities. Pending is the defendants' motion for summary judgment. For the reasons that follow, the motion is granted.

**I.     Facts**[2]

On March 19, 2002, Vines informed Captain Butler that his cellmate was threatening him. Vines asked to be moved to another cell. Captain Butler refused to move Vines to another cell and remarked that no one would be moved until there was a fight. Vines informed Mental Health Worker Woolven of his fears concerning his

---

[1] The amended complaint names the following defendants: Commissioner John J. Armstrong, Dept. Commissioner Peter Matos, Security Director Vincent Santopietro, Lead Warden Larry Myers, Captain Maurice Butler, Captain William Faneuff, Captain Kim Weir, Lieutenant Robert Knapp, Lieutenant Joseph Casey, Medical Administrator Pat Wollenhaupt, Medic Margaret Clark, Medic Anna, Officer Ms. St. John, Correctional Officers Curtis, Warner, Cox, Smith, Maloney and Mental Health Case Worker Irene Woolven.

[2] The facts are taken from plaintiff's Statement of Disputed Facts [Dkt. No. 39], the exhibits attached to plaintiff's Opposition to Motion for Summary Judgment [Dkt. No. 35], Defendants' Local Rule 56(a)1 Statement of Material Facts Not in Dispute [Dkt. No. 33-3] and the exhibits attached to the Defendants' Memorandum in Support of Motion for Summary Judgment [Dkt. No. 33-1].

cellmate. Mental Health Worker Woolven indicated that she would report the matter as an emergency. Later that day, Correctional Officer St. John informed Vines that no cell changes would be made that day, but that he should speak to Captain Butler the following morning. Vines handed Correctional Officer St. John an emergency grievance to submit to the second shift supervisors. Vines alleges Correctional Officer St. John failed to deliver the grievance.

On March 20, 2002, Correctional Officers Curtis and Warner approached Vines's cell and asked him to put his hands through the slot in the cell door to be handcuffed to go to recreation. Vines informed the officers that he did not want to be placed in handcuffs first because he feared his cellmate would assault him. The officers again gave Vines an order to submit his wrists for handcuffing. Vines complied with the order. After the handcuffs were applied, Vines's cellmate assaulted him. Vines alleges Officers Curtis and Warner told his cellmate to attack him and then stood by during the assault cheering on his cellmate.

After several minutes, Officers Curtis and Warner told Vines to put his hands in the slot of the door to have the handcuffs removed to enable him to defend himself against the attack by his cellmate. Vines placed his hands in the slot of the door and Officers Curtis and Warren removed the handcuffs. A correctional officer contacted the pod officer and instructed the officer to call a Code Blue for Vines's cell. Captains Weir and Fanueff, Lieutenants Knapp and Casey and Correctional Officers Cox, Maloney, Smith and others arrived at the cell, but did not enter the cell immediately because Vines's cellmate would not submit to be handcuffed. Once Vines's cellmate

surrendered himself to be handcuffed through the slot in the cell door, Captain Weir, Lieutenants Casey and Knapp and Officer Cox entered the cell and applied leg irons to both Vines and his cellmate.  These officers escorted Vines to the medical unit.

      Vines suffered injuries to his neck, back and head.  Nurse Clark examined Vines, assessed his injuries, noted a red swollen area on his forehead, instructed him to apply cool compresses to the area and to use sick call if necessary.  Nurse Pruyne examined Vines on March 21, 2002, for complaints of chest pain.  The medical records reflect that Vines's vital signs were normal and he was asymptomatic during the examination.  As a precaution, Nurse Pruyne ordered Vines not to participate in recreation for three days.  On March 23, 2002, Nurse Lymon assessed Vines for complaints of chest pain.  Nurse Lymon noted no signs of chest pain or discomfort.  On April 2, 2002, Vines informed Nurse Anna Zuccalo that he wanted to be examined because he had been hit in the head.  Nurse Zuccalo assessed his vital signs, performed neurological checks, referred him to the Advanced Practice Registered Nurse ("APRN"), and instructed him to continue relaxation techniques.  The medical records reflect that on April 8, 2002, Vines had an appointment to see the APRN, but refused to leave his cell to see her.  Vines claims that he did not refuse to leave his cell.  On May 31, 2002, the APRN performed a physical examination of Vines.  The medical records reflect that the exam was essentially normal except for muscle spasms in the right side of plaintiff's neck.  The APRN prescribed exercises to reduce the spasms, scheduled him for bloodwork, and placed him on the list to see the optometrist.

Vines alleges Correctional Officers Curtis, Warner, Cox and Smith falsified documents regarding the assault and threatened Vines not to tell the truth regarding the assault. Vines was assaulted by other inmates on four other occasions during the period from June 17, 2002 through August 13, 2002.

## II.   Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for

summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).  A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is also insufficient to preclude summary judgment.  See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523.  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

### III. Discussion

The defendants raise three grounds in support of their motion:  (1) Vines's claims of failure to protect and failure to provide medical treatment are barred by the doctrines of collateral estoppel and res judicata; (2) the claims that the defendants made false statements, threatened him with bodily harm, and provided him with inadequate medical treatment fail to state a claim upon which relief may be granted; (3) defendants Armstrong, Santopietro and Myers are entitled to qualified immunity.

#### 1. Collateral Estoppel

The defendants first argue that Vines's claim of failure to protect him from assault by his cellmate and failure to provide adequate medical treatment for his injuries are precluded by a state court decision in Vines v. Warden, State Prison, No. CV01-0003438 (Conn. Super. Ct. Feb. 24, 2004).  Vines contends that he did not have a full and fair opportunity to present and argue his claims in state court.

Under the [United States] Constitution's Full Faith and Credit Clause, see U.S. Const. Art. IV, § 1, federal courts must accord state court judgments the same preclusive effect as other courts within that state. Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted). Thus, "issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the state where the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 83 (1984). Accordingly, the court must apply the same preclusive effect to an inmate's state habeas decision as would Connecticut state courts. See Kulak v. City of New York, 88 F.3d 63, 71-72 (2d Cir.1996) (applying collateral estoppel to bar relitigation in a federal section 1983 action of issues previously decided in a state habeas proceeding); Burgos, 14 F.3d at 792-93 (noting that state habeas decision may have preclusive effect in subsequent federal section 1983 action).

To determine whether Vines is barred from litigating the claims which were asserted in the state habeas proceeding, the court looks to Connecticut law. See Burgos, 14 F.3d at 790, 792 (federal court looks to state law to determine whether claim are barred by res judicata or collateral estoppel). Under Connecticut law, "[f]or an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." Virgo v. Lyons, 209 Conn. 497, 501 (1988). An issue was fully and fairly litigated if the issue was "properly raised in the pleadings, submitted for determination, and in fact determined." Scalzo v. Danbury, 224 Conn. 124, 128, (1992)

(citation omitted). In addition, there must not have been any procedural limitations in the original action which would have precluded a full and fair opportunity to litigate the issue. Aetna Casualty & Surety, Co., 220 Conn. at 306; see also Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 331 (1979) (noting that estoppel may well be unfair to a litigant "where the second action affords the [party against whom estoppel is invoked] procedural opportunities unavailable in the first action that could readily cause a different result"). Nevertheless, collateral estoppel may apply even if the relief sought in the present action was unavailable in the prior action.

The doctrine of collateral estoppel may be invoked by one who was not a party to the original action. Aetna Casualty & Surety, 220 Conn. at 302 (mutuality of parties is not required to assert issue preclusion). The Supreme Court abandoned the doctrine of mutuality in Parklane Hoisery. The Connecticut Supreme Court adoped this position in Aetna Casualty and Surety Company in 1991. 220 Conn. at 301-03. ("While the case may arise where a lack of mutuality of parties would render the use of collateral estoppel patently unfair, that rule will no longer operate automatically to bar the use of collateral estoppel . . . ."). So long as the party against whom the doctrine is applied had the opportunity to litigate the merits of the issue in the prior action, collateral estoppel may be invoked. Id.

In this case, as Vines's custodian at the time of the incident, Warden Myers was a party to the state court habeas action. Although the other named defendants were not parties to the state habeas action, they may invoke the doctrine of collateral estoppel with regard to any issue that was fully and fairly litigated in the state court proceeding.

7

The state habeas action considered plaintiff's claims that prison officials at Northern Correctional Institution failed to protect him from assault by his cellmate on March 20, 2002, claims relating to four other assaults that occurred during the months of June through August 2002 and a claim that the assaults occurred in part due to the warden's in-cell handcuffing policy. At the hearing on the state habeas action, the state court heard testimony from seventeen witnesses, at least two of which were inmates, and considered 147 exhibits. The state court held that Vines did not suffer serious physical injury as a result of any of the 2002 incidents. The court also held that there was no evidence to demonstrate that Department of Correction officials were deliberately indifferent to the safety concerns of the petitioner before or during any of the five assaults. Thus, the court denied the petition.

Vines contends that he did not have the opportunity to fully litigate the issue of Department of Correction's deliberate indifference to his safety in state habeas action because he was not represented by counsel and the court limited the number of witnesses he could call at the hearing. He also claims that the habeas court judge denied his request for certification to appeal.

Vines contends that he could not fully litigate his claims in the state habeas petition because the judge only permitted him to call two non-Department of Correction witnesses. It is clear from the habeas court's decision that the court heard testimony from seventeen witnesses, at least two of whom were inmates. Vines does not allege that he was unable to question his own witnesses or cross-examine the state's witnesses. Vines does not indicate what other witnesses he sought to call, what their testimony might have been, or how it would have changed the result of the court's

decision.³  Vines conducted discovery, and the court permitted him to submit 139 exhibits at the hearing on the habeas petition.  Thus, the court provided Vines with ample opportunity to litigate his claims.

Vines claims that he could not fairly litigate his habeas petition because the court denied his request for appointment of counsel.  There is no right under either the United States or Connecticut Constitution to be appointed an attorney in a habeas corpus matter.  Connecticut General Statutes § 51-196(a), however, requires that a state court judge appoint a public defender to represent an indigent defendant in a case challenging the defendant's conviction or sentence.  Vines's habeas petition challenged the conditions of his confinement, not his conviction.  Thus, the state court judge ruled that Connecticut law did not provide for the appointment of counsel for Vines in the habeas proceeding and the issues presented did not warrant the appointment of counsel under his discretionary power to do so.  Because there is no requirement that counsel be appointed to represent an inmate in a state habeas petition challenging conditions of confinement, the fact that Vines proceeded pro se does not render the state habeas proceeding unfair.

Vines also argues that he was unable to appeal the decision of the habeas court.  Vines states that he filed a petition for certification to appeal the decision, but the habeas court judge denied the petition.  He does not indicate that he tried to appeal the

---

³ Vines also claims that the respondent in the habeas petition provided him with "distorted and tampered evidence" in response to his discovery requests.  Pl.'s Decl. Opp'n Mot. Summ. J. at 2.  It is evident that the documents produced to Vines have not been tampered with, but rather that certain words, inmate names and numbers have been redacted from the documents.  See Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 2.

9

denial of the petition for certification. A party may appeal the denial of a petition for certification by a Superior Court to the Connecticut Appellate or Supreme Courts. See Simms v. Warden, 229 Conn. 178, 187-88 (1994) (construing § 52-470(b) to allow for appeal of denial of certification of appeal). Thus, Vines's claim that he could not appeal the decision of the habeas court is without merit.

Vines was able to conduct discovery, call witnesses, cross-examine the state's witnesses and offer voluminous pieces of evidence in support of his claims. The court concludes that Vines has failed to present evidence to support his claim that the issue of deliberate indifference to his safety on March 20, 2002, was not fully and fairly litigated in the state habeas proceeding. Thus, this court concludes that Vines is barred by the doctrine of collateral estoppel from relitigating this issue.

The defendants also argue that Vines's claim that Nurses Clark, Anna and Wollenhaupt were deliberately indifferent to the injuries he suffered as a result of the March 2002 assault is barred by collateral estoppel because the habeas court concluded that Vines did not suffer serious injuries as a result of any of the five assaults. Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). In order to prevail on a claim of deliberate indifference to medical needs, an inmate must show that he suffered from a serious medical need. Wilson v. Seiter, 501 U.S. 294, 298 (1991) (alleged deprivation must be "sufficiently serious" in objective terms); see also Neitzke

v. Williams, 490 U.S. 319 (1989) (brain tumor); Hathaway v. Coughlin, 841 F.2d 48 (2d. Cir. 1988) (broken pins in hip); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (doctor discarded inmate's ear and stitched stump rather than attempting to reattach ear); Martinez v. Mancusi, 443 F.2d 921, 923 (2d Cir. 1970) (prison doctor refused to follow surgeon's instructions and refused to give prescribed painkiller to inmate), cert. denied, 401 U.S. 983 (1971). Because the state habeas court has already determined that Vines did not suffer serious injuries as a result of any of the five assaults, Vines may not challenge that fact in a claim that the nurse defendants were deliberately indifferent to his medical needs after the assault. Thus, the court concludes that Vines's claims of deliberate indifference to medical needs are barred by collateral estoppel. The defendants' motion for summary judgment is granted as to the claims that the defendants failed to protect him from assault and were deliberately indifference to his medical needs.

### 2. False Statements and Threats

The defendants next argue that Vines's claims that defendants Curtis, Warner, Cox and Smith conspired to falsify reports concerning the March 2002 assault and threatened to harm him if he did not lie about what actually happened during the assault fail to state a claim upon which relief may be granted. Vines contends that the filing of false reports violated his right to equal protection of the law and the threats of harm violated his right to be free from cruel and unusual punishment.

Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983. See McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), cert. denied 464 U.S. 998 (1983); Purcell v. Coughlin, 790 F.2d 263,

265 (2d Cir. 1986).

> The realities of a maximum [security] . . . correctional institution are far removed from the peace of a judge's chambers . . ., and the court is fully aware that the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons. The court does not condone this; it merely recognizes that racial insults do not deprive prisoners of the minimal civilized measure of life's necessities, and thus do not constitute an eighth amendment violation.

Morgan v. Ward, 699 F. Supp. 1025, 1055 (N.D.N.Y. 1988) (citations omitted). Vines alleges that defendants Curtis, Warner, Cox and Smith threatened him with bodily harm if he told the truth about what happened during the assault. Vines has not alleged, however, that he was in any way physically harmed or injured as a result of the verbal threats. He attempts to argue that an alleged use of force by two correctional officers, who are not defendants in this action, one year after the March 2002 assault by Vines's cellmate is evidence that defendants Curtis, Warner, Cox and Smith carried out their threats to harm him. The documents submitted by Vines do not in any way support his claim that the alleged use of force by Officer O'Dell on March 18, 2003, was related to the incident involving the assault on Vines by his cellmate on March 20, 2002. Because verbal harassment does not give rise to a violation of federally or constitutionally protected right, Vines's claims of verbal threats and harassment against defendants Curtis, Warner, Cox and Smith fail to state a claim upon which relief may be granted. The motion for summary judgment is granted as to this claim.

Vines also alleges that defendants Curtis, Warner, Cox and Smith falsified reports regarding the assault by his cellmate. Vines has not come forward with evidence that information in the reports was false and does not indicate how any false information prejudiced or harmed him. Thus, the court concludes that Vines has failed

to set forth facts or provide evidence to support a claim that alleged false information reported by defendants Curtis, Warner, Cox and Smith violated his federally or constitutionally protected rights.  The motion for summary judgment is granted as to this claim.

**IV.    CONCLUSION**

The defendants' Motion for Summary Judgment [Dkt. No. 33] is GRANTED.  The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED.**

Dated this 28th day of March, 2005, at Bridgeport, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

13